1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KARIN WENG,

      *Plaintiff*

      v.

HILDA L. SOLIS, Secretary of Labor

      *Defendant.*

No.  1:10-cv-2051 BJR
ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DIMISS OR IN THE
ALTERNATIVE FOR PARTIAL
SUMMARY JUDGMENT

## I.    INTRODUCTION

This matter comes before the court on Defendant's motion to dismiss Plaintiff's claims brought pursuant to the Rehabilitation Act of 1973 ("Rehabilitation Act") and Title VII of the Civil Rights Act of 1964 (Title VII"). In the alternative, Defendant seeks partial summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Upon consideration of the motion and reply, the opposition thereto, as well as the relevant law, the court finds as follows.

## II.    BACKGROUND

Plaintiff, Karin Weng, has been employed as an Employee Benefits Law Specialist in the United States Department of Labor's (the "Agency") Employee Benefits Security Administration ("ESBA") since 1995. (Complaint (Dkt. No. 1) at ¶ 10.). Ms. Weng alleges that since she joined ESBA she has been a victim of discrimination based on her race (Asian), national origin (Taiwanese), and sex (female). She further alleges that after she engaged in protected Equal Employment Opportunity Commission ("EEOC") activity in 2006, both as a witness in two of her co-workers' cases and as a complainant, she has been subject to retaliation. She claims that the hostile work environment in ESBA has caused her emotional distress, anxiety, and depression, among other things, and has affected her ability to do her best work. (Pl. Opp. to Mot. to Dis. (Dkt. No. 9) at 4.).

### A.    Procedural History

To date, Ms. Weng has filed seven formal EEOC complaints. (Dkt. No. 1, ¶¶ 8, 53, 59, 67, 71, 75-76, 79, 81, 83-84, 91-93; Def. Mot to D/Mot. for S.J. (Dkt. No. 6), Ex. A-H.).[1] She filed the first complaint on June 16, 2006, alleging disparate treatment based upon her race, color, national origin, sex, and reprisal for participating in protected activity. (Dkt. No. 1, ¶ 8.). She filed the second complaint on March 27, 2007, alleging reprisal for engaging in protected EEO activity. *Id*. On February 21, 2008, she filed a third action against the Agency, alleging

---

[1]     Procedures for handling complaints of discrimination brought by federal government employees under Title VII are found in 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity). *See* 29 C.F.R. § 1614.103. Before the complainant may file a formal discrimination complaint, she first must consult a Counselor to try to resolve the matter informally. 29 C.F.R. § 1614.105(a). Such contact must be made within 45 days of the alleged discriminatory act or, in the case of a personnel action, within 45 days of its effective date. 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved informally, the complainant may file a formal complaint against the Agency. 29 C.F.R. § 1614.105(d). The Agency must investigate the matter within 180 days of its filing. 29 C.F.R. § 1614.105(e)(2). At the conclusion of the investigation, the complainant has the right either to request a hearing and decision from an administrative judge, or to request an immediate final decision from the Agency. 29 C.F.R. § 1614.108(f). A complainant may either appeal a decision to the EEOC, or file a civil action in federal district court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

disparate treatment based on her race, color, national origin, sex and reprisal for participating in protected EEO activity. (*Id.* at ¶¶ 8, 71.). Ms. Weng alleges that these three complaints were later consolidated into one EEOC case, Case No. 570-2007-459X. (*Id.* at ¶ 71.)[2]

Pursuant to Ms. Weng's request for a hearing before an EEOC Administrative Law Judge ("ALJ"), a hearing was held on May 26-27 and June 3, 2008, at which Ms. Weng and fourteen other witnesses testified. (Dkt. No. 6, Ex. A.). ALJ Melissa S. Brand presided and issued a decision on August 30, 2010 pursuant to 29 C.F.R. § 1614.109(i). *Id.* The ALJ held that: (1) Ms. Weng was not an individual with a disability as defined by the Rehabilitation Act because she had not offered sufficient evidence to show that her alleged impairments substantially limited her from performing any major life activity; (2) even if she had proven her disability, the Agency did not fail to reasonably accommodate her; (3) Ms. Weng failed to establish by a preponderance of the evidence that the Agency's articulated legitimate, non-discriminatory reasons for its actions were pretext for discrimination; (4) she failed to establish by a preponderance of the evidence that the alleged discriminatory incidents were based on any protected class to which she belonged, therefore she was not subjected to a hostile work environment; and (5) she failed to establish that she was subject to a retaliatory comments. (Dkt. No. 6, Ex. B.). Accordingly, the ALJ entered an order in favor of the Agency and the Agency entered its Final Agency Decision ("FAD") on October 13, 2010. *Id.*

In the interim, on August 31, 2008, Ms. Weng filed her fourth formal EEOC complaint (CRC Case No. 08-11-112). (Dkt. No. 1, ¶ 75; Dkt. No. 6, Ex. E.). In it, she alleges that the EBSA discriminated against her based on her race, sex, national origin, disability and/or reprisal for prior protected EEOC activity when she received a "Minimally Satisfactory" rating on her

---

[2]     Plaintiff subsequently voluntarily dismissed her claims for color discrimination. (Dkt. No. 1, ¶¶ 8, 38 and 59.).

fiscal year 2008 mid-year performance review and final performance appraisal. (Dkt. No. 1, ¶ 75.). The Agency issued a FAD denying Ms. Weng's complaint on April 10, 2009. (Dkt. No. 6, Ex. E.). Ms. Weng timely appealed on May 8, 2009. *Id*. The appeal was still pending with the EEOC Office of Federal Operations at the time of filing the present action. (Dkt. No. 1, ¶ 76.).

Ms. Weng filed a fifth formal complaint on April 6, 2009, in which she challenged the "Minimally Satisfactory" rating Ms. Hall gave her on her fiscal year 2008 year-end review. (CRC Case No. 09-11-051). (Dkt. No. 1, ¶¶ 76 and 81.). The Agency's Civil Rights Center ("CRC") dismissed the complaint on May 1, 2009 on the grounds that the allegations raised in this complaint were substantially similar to the allegations raised in the fourth complaint. (*Id*. at ¶ 81.). Ms. Weng did not take further action on the fifth EEOC complaint.

Thereafter, on August 25, 2009, Ms. Weng filed her sixth formal complaint (CRC Case No. 09-11-086). (Dkt. No. 1, ¶ 84.). The CRC accepted the following amended issue for investigation: whether the EBSA discriminated against Ms. Weng in reprisal for prior EEO activity when she was given a "Minimally Satisfactory" overall rating on her April 24, 2009 mid-year performance review. (Dkt. No. 6, Ex. G.). The CRC issued a FAD denying the sixth complaint on May 10, 2010. *Id*. Ms. Weng appealed the decision to the EEOC's Office of Federal Operations ("OFO"), and on November 19, 2010, the OFO affirmed the CRC decision. (Dkt. No. 1, ¶ 84; *Weng v. Solis*, 2010 WL 4898991 (E.E.O.C. Nov. 19, 2010.). The OFO found that although Ms. Weng's complaint satisfied the elements to establish a prima facie case of reprisal discrimination, the Agency articulated legitimate, non-discriminatory reasons for its actions, and Ms. Weng failed to show that those reasons were a pretext for discrimination. *Weng*, 2010 WL 4898991, at *2-*3.

ORDER-4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Ms. Weng filed her seventh formal complaint (CRC Case No. 10-11-105) with the EEOC on July 23, 2010, in which she challenges the "Minimally Satisfactory" overall rating she received on her fiscal year 2010 mid-year performance review. (Dkt. No. 1, ¶ 93; Dkt. No. 6, Ex. H.). The EEOC accepted the complaint for investigation on her retaliation claim. (Dkt. No. 1, ¶ 93.).

On December 1, 2010, while the seventh complaint was still pending (but not yet pending for more than 180 days), Ms. Weng commenced the instant case in the United States District Court for the District of Columbia, alleging discrimination based upon her race, national origin, sex, and in reprisal for engaging in protected activity. (Dkt. No. 1.). Thereafter, the CRC issued a letter dated February 24, 2011 dismissing the seventh EEOC complaint on the grounds that Ms. Weng had filed the instant action. (Dkt. No. 9 at 22.).

### B.  Factual Allegations

Plaintiff alleges the following facts as the basis for the present action:[3]

Ms. Weng is a native of Taiwan but attended high school through law school in the United States. She is employed as an Employee Benefits Law Specialist, GS-13, with the Office of Exemption Determinations ("OED"), which is one of nine offices in the Employee Benefits Security Administration ("ESBA") in the United States Department of Labor ("Agency"). Her primary duties include processing applications for administrative exemptions from the prohibited transaction provisions of ERISA. This includes drafting notices for publication and comment in the *Federal Register*. In addition, Ms. Weng drafts interpretive, informational, and denial letters. Since April 2004, Ms. Weng's first line supervisor has been Eric Raps, the Section Chief for the Division of Individual Exemptions. Her second line supervisor is Lyssa Hall, Deputy Director

---

[3]     The allegations are set forth in the Complaint (dkt. no. 1) and ALJ Brand's August 30, 2010 decision (dkt. no. 9).

for the Division of Individual Exemptions, and her third line supervisor is Ivan Strasfeld, Director of OED.

Ms. Weng claims that since she joined OED, she has been the victim of discrimination based on her race, national origin, and sex, including being subjected to racial slurs and comments, along with other minority employees in OED. She alleges that in 1999 a co-worker, Janet Schmidt, told her that Mr. Strasfeld and other members of management referred to Ms. Weng as "the Chinker." She further alleges that Ms. Schmidt told her that Mr. Strasfeld told Ms. Schmidt and other co-workers that they should stay away from Ms. Weng because she is "crazy" and "unstable." She also alleges that in 1995 or 1996 another management official, Peter Straub, told her that he heard management members say that they were going to "see about firing the Chinker" during her probation period.[4]

Ms. Weng alleges that she has had trouble dealing with Mr. Raps since he first became her supervisor. For example, she claims that starting in June 2005, Mr. Raps began to micromanage her, "nitpicking" at her work, and finding fault with inconsequential aspects of her assignments. As a result, Ms. Weng claims that she requested she be assigned on a detail[5] outside the OED. She alleges that during a conversation with Mr. Strasfeld regarding the potential detail, he advised her not to "burn her bridges." Ms. Weng claims that she interpreted this comment as a discrete warning to her to not engage in the EEOC process. She went on detail from August 2005 through December 2005.

---

[4]     Ms. Weng alleges that the Agency engaged in a pattern and practice of discrimination against non-American employees. She claims that the EBSA management referred to a Russian employee as "the Mad Russian," "the Crazy Russian," "Ruskie," or "Eurotrash," and a German employee was given the Nazi salute to mock her German background.

[5]     "Detail" refers to a temporary assignment outside an employee's current department.

ORDER-6

In February 2006, after Ms. Weng returned to the OED, she testified at an arbitration involving a 2004 grievance filed by the Union against Mr. Raps.[6] She claims that around this same time, Mr. Raps' harassment of her intensified. He continued to micromanage her, subjected her to heightened scrutiny, and unjustifiably criticized her work product. During this time, Ms. Weng requested to work from home two days a week. (She was already working from home—referred to as a Flexiplace day—one day a week.) She alleges that she made this request because her relationship with Mr. Rap was becoming "increasingly strange." Mr. Rap initially denied the request, but Ms. Hall, Ms. Weng's second line supervisor, granted the request.

Ms. Weng asserts that also around this time, Mr. Raps began making harassing phone calls to her while she worked at home. For example, she claims that Mr. Raps would call her and she would have to repeat things that she already said to him in an email. In addition, she felt that he would call her when there was no reason to call.

Ms. Weng also alleges that during this same time period, Ms. Hall showed preferential treatment to two African-American employees by ensuring that they received "choice, career-enhancing work assignments." (Dkt. No. 1 at ¶ 31.). She further claims that Ms. Hall denied her request to change supervisors and that, upon information and belief, she is the only Employee Benefits Specialist in OED to be denied such a request.

On April 21, 2006, Mr. Raps gave Ms. Weng her mid-year review. He rated her as "Needs to Improve" in every performance standard, which resulted in a "Minimally Satisfactory"

---

[6]     Two other minority female employees who were supervised by Mr. Raps, Mr. Stasfeld and Ms. Hall—Janet Schmidt and Ekaterina Uzlyan—also filed EEOC actions. Ms. Schmidt has filed at least two complaints, two of which ended up in federal district court. The first case was dismissed on summary judgment on October 4, 2006. A second case is pending before Magistrate Judge Facciola in the United States District Court for the District of Columbia. (No. 07-cv-2216 (JMF)). Ms. Uzlyan filed suit in the United States District Court for the District of Columbia on June 3, 2009, alleging discrimination based on her mental and physical disabilities, national origin, gender and/or reprisal for engaging in protected activity. (No. 09-cv-1035 (RMC)). The matter is currently pending before Judge Collyer.

ORDER-7

overall rating. He told her that she needs to work on her professional relationships, particularly with regard to communicating with him. He also suggested that she take a writing course and a training course on interpersonal skills.[7]  She claims that on April 24, 2006, Mr. Raps issued an "unjustified" Warning Memorandum for failure to follow instructions and unprofessional conduct. This was followed up on May 10, 2006 with an "unjustified" Letter of Reprimand.

On June 16, 2006, Ms. Weng filed her first formal EEOC complaint against Mr. Strasfeld, Ms. Hall, and Mr. Raps. One week later, she was deposed in Ms. Schmidt's EEOC case involving these same individuals, and on November 1, she submitted an affidavit in support of Ms. Uzlyan's EEOC complaint against them. Thereafter, on November 17, 2006, Mr. Raps gave Ms. Weng a "Minimally Satisfactory" final performance appraisal for the fiscal year 2006.

Around this time, Ms. Weng began seeing a psychotherapist because "she recognized the onset of depressive symptoms caused by Mr. Raps' unrelenting harassment of her." (Dkt. No. 1 at ¶ 43.). She claims that her doctor diagnosed her with Post-Traumatic Stress Disorder ("PTSD"), Vicarious PTSD, and related mood disorders, including depression and anxiety. She claims that these conditions are the result of Mr. Raps' abusive behavior towards her, and from witnessing the abuse he inflicted on Ms. Schmidt and Ms. Uzylan.

As a result of her alleged disability, Ms. Weng requested that a neutral third party be present at any meeting she had with Mr. Raps. She alleges that the Agency refused her

---

[7]  Ms. Weng claims that this is the first negative review she received. She asserts that prior to this review, she earned excellent performance evaluations, never falling below a rating of "Highly Effective." In 2000, she received a rating of "Outstanding," in 2003, she received a cash award, and in 2004 and 2005 Mr. Raps rated her as "Highly Effective." Ms. Weng also alleges that she was rated as "Exceeds" on her work while on detail in 2005. (Dkt. No. 1 ¶¶ 17, 22 and 27.).

accommodation request and, instead, Mr. Raps threatened to fire her and issued a Notice of Proposed Suspension for five days, dated December 14, 2006.[8]

Ms. Weng alleges that Mr. Raps further retaliated against her on December 19, 2006, when he issued her a Notice of Removal from Flexiplace. She claims that she is the only OED employee, other than Ms. Uzlyan, who has ever been removed from Flexiplace. Later that day, Ms. Weng submitted a second accommodation request—the restoration of her Flexiplace privileges—but the request was denied.[9] On March 27, 2007, Ms. Weng filed a second EEOC complaint, alleging retaliation for her accommodation requests.

From January 2007 to September 2007, Mr. Raps was on a detail and did not work in the OED. On September 28, 2007, when Mr. Raps returned to OED, Ms. Weng was informed that ESBA management would require her to meet alone with Mr. Raps or she would be, first, suspended, and, second, terminated. She alleges that during a meeting with Mr. Raps on October 9, 2007, she suffered an emotional breakdown in the form of a panic attack, which Mr. Raps knowingly triggered by his harassment of her.

Ms. Weng claims that ten days after she suffered the panic attack, she renewed her accommodation request to either have a third party present during her meetings with Mr. Raps or to meet in a conference room. Instead, Mr. Raps offered to meet with Ms. Weng in a vacant OED office that is larger than his own office but with the two of them seated knee-to-knee at a small table. Ms. Weng states that she found this arrangement too threatening and went out on medical leave. Thereafter, on December 4, 2007, the Public Health Service issued Ms. Weng a favorable medical assessment regarding her accommodation request. Ms. Weng alleges that Mr. Raps still

---

[8]      The suspension was later reduced to two days by Ms. Hall. Ms. Weng asserts that she is the only Employee Benefits Law Specialist in OED to have ever been suspended.

[9]      The Flexiplace benefits were eventually restored in November 2009.

ORDER-9

refused to meet with her in the conference room, but consented to meet with her in the larger office, seated apart, with the door open. Ms. Weng accepted this accommodation.

On December 7, 2007, Mr. Raps issued Ms. Weng a Notice of Proposed Suspension for 14 days. On February 21, 2008, Ms. Weng filed her third EEOC complaint. Thereafter, on March 12, 2008, Ms. Hall imposed Mr. Raps proposed suspension. Ms. Weng alleges that she was issued this suspension for "having a panic attack." (Dkt. No. 1, ¶¶ 68 and 72.).

Ms. Weng claims that she was further retaliated against by Mr. Raps, Ms. Hall and Mr. Strasfeld when they gave her "Minimally Satisfactory" performance evaluations dated January 24 and June 16, 2008. She filed her fourth EEOC complaint on August 21, 2008. Ms. Weng was again given a "Minimally Satisfactory" performance evaluation on October 17 and December 9, 2008, and she filed her fifth and sixth EEOC complaints on April 6 and August 25, 2009.

She also received "Minimally Satisfactory" performance reviews on June 3 and October 18, 2010. She claims that Mr. Raps also retaliated against her by threatening to place her on a Performance Improvement Plan, by bringing an "adversary" to her 2010 mid-year evaluation, by issuing an "unjustified" Warning Memorandum on July 1, 2010, by issuing an "unjustified" Leave Restriction for alleged leave abuse, and by issuing a second Notice of Removal from Flexiplace Benefits on November 9, 2010. She filed her final EEOC action on July 23, 2010.

### C.    Present claims

Accordingly, Ms. Weng claims that the Agency discriminated and/or retaliated against her when it took the following actions:

1.    Issued her "Minimally Satisfactory" mid-year performance evaluations for fiscal years 2006, 2008, 2009 and 2010 that include allegedly demeaning instructions to take writing and interpersonal training courses;

ORDER-10

2.      Issued her "Minimally Satisfactory" annual performance evaluations for fiscal years 2006, 2007, 2008 and 2010, which allegedly resulted in the denial of two in-grade step increase and four performance bonuses;

3.      Issued her an "Effective" annual performance evaluation for fiscal year 2009;

4.      Removed her twice from the Agency's Flexiplace Program;

5.      Issued her written discipline notices on the following five occasions:

    a.      Warning Memorandum (April 2006)

    b.      Letter of Reprimand (May 2006)

    c.      Warning via E-mail (March 2010)

    d.      Warning Memorandum (July 2010)

    e.      Warning via E-mail (August 2010);

6.      Issued her two work suspensions:

    a.      Five-day suspension served as a two-day suspension (April 2007)

    b.      Fourteen-day suspension served as a fourteen-day work suspension (April 2008);

7.      Allegedly subjected her to an ongoing hostile work environment.

## III.   DISCUSCION

Defendant contends that many of Plaintiff's claims are subject to dismissal because Ms. Weng either failed to timely exhaust her administrative remedies, elected to pursue the claims in a grievance procedure under a collective bargaining agreement between her union and the

Agency, failed to timely initiate civil proceedings, or otherwise failed to state a claim for relief. (Dkt. No. 6 at 7.).[10]

### A.   Fed. R. Civ. P. 12(b)(6)

"Because the exhaustion requirement [under Title VII], though mandatory, is not jurisdictional," *Douglas v. Donovan*, 559 F.3d 549, 556 n. 4 (D.C.Cir.2009), motions to dismiss for failure to exhaust administrative remedies are more appropriately analyzed under Rule 12(b)(6). *Citizens for Responsibility and Ethics in Wash. v. Bd. of Governors of the Fed. Reserve Sys.*, 669 F.Supp.2d 126, 128 (D.D.C. 2009) (citing *Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F.Supp.2d 59, 64 n. 6 (D.D.C. 2008) (quoting *Hazel v. Wash. Metro. Transit Auth.*, Civil Action No. 02–1375(RWR), 2006 WL 3623693, at *3 (D.D.C. Dec. 4, 2006))). The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, (1957). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of  "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[10]   The court notes that despite its caption, the contents of Defendant's motion limit the basis for relief to Federal Rule 12(b)(6) or (f). "In determining whether a complaint fails to state a claim" under Rule 12(b)(6), the trial court may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated [by reference] in the complaint and matters [subject to] judicial notice." *Williams v. Chu*, 641 F.Supp.2d 31, 34 (D.D.C. 2009) quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir.1997). The court has not considered materials beyond the complaint and the exhibits incorporated therein by reference. Accordingly, the court will treat this as a motion to dismiss under Federal Rule 12.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C. 1994). However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 671.

**B**.     **Fed. R. Civ. P. 12(f)**

Under Rule 12(f), a "court may order stricken from any pleading any insufficient defense or redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may choose to take such action in order to avoid the time, effort, and expense necessary to litigate spurious issues. *Id., Assn. of Am. Med. Colleges v. Princeton Review, Inc.*, 332 F.Supp.2d 11, 22 (D.D.C. 2004). Courts disfavor motions to strike. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 201 (D.C.Cir. 1981). Absent a "strong reason for so doing," courts will generally "not tamper with pleadings." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

**C.     Analysis**

*1.     Whether Plaintiff Timely Exhausted Her Administrative Remedies*

Defendant asserts that the following claims must be dismissed because they have not been properly exhausted: (1) all claims that pre-date March 10, 2006; (2) claims related to the

ORDER-13

fifth EEOC formal complaint; (3) claims related to the seventh formal EEOC complaint; and (4) claims that have not been previously raised in an administrative proceeding. (Dkt. No. 6 at 14.).

### a.      Allegations that Pre-date March 10, 200

A federal employee must initiate contact with an EEOC Counselor within forty-five days of the date of the event believed to be the discriminatory or retaliatory action. 29 C.F.R. § 1614.105(a)(1). It is undisputed that Ms. Weng first sought informal counseling on April 24, 2006. (Dkt. No. 1 at ¶ 38.). Therefore, the operative deadline is March 10, 2006—in order to be timely, the allegations must pertain to actions that occurred on or after March 10, 2006.

Plaintiff concedes that the operative deadline is March 10, 2006. Nevertheless, she argues that the pre-March 10, 2006 allegations should not be dismissed because they are part of her hostile work environment claim. Generally "discrete discriminatory acts are not actionable if time barred, even when they relate to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). However, with respect to hostile work environment claims, the Supreme Court has carved out an exception to the rule. *Id*. at 117. A claim of hostile work environment, the Supreme Court has explained, cannot be reduced to a single action on a single day because "[its] very nature involves repeated conduct," and it is based on the "cumulative effect of individual acts." *Id*. at 115. The unlawful employment practice at issue in a hostile work environment claim occurs over a period of time, and, "[p]rovided that an act contributing to the claim occur[red] within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 117. Accordingly, this court must "determine whether the acts about which [Ms. Weng] complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id*. at 120.

ORDER-14

With this analysis in mind, the court will now turn to the Complaint. In paragraphs 15 and 16, Ms. Weng alleges that "[f]rom the time [she] joined EBSA in 1995, she, along with other minority employees in OED (including Ms. Hall), were subjected to offensive racial, ethnic, and/or sexually charged slurs, comments, and jokes by OED management officials." (Dkt. No. 1 at ¶ 15.). She further alleges that management referred to her as "the Chinker" and warned other co-workers to stay away from her because she is "crazy" and "unstable." (*Id*. at ¶ 16.). These allegations were raised in Ms. Weng's first three formal EEOC complaints and were addressed in ALJ Brand's August 30, 2010 order. (Dkt. No. 6, Ex. A.). These acts are clearly a part of the same actionable hostile work environment practice of which Ms. Weng complained when she first sought counsel on April 24, 2006. *See Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21-22 (1993) (Plaintiff must demonstrate that her "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment."). Accordingly, Defendant's motion is denied as to paragraphs 15 and 16.

Paragraph 18 merely states that Mr. Raps is Ms. Weng's first-line supervisor and Mr. Strasfeld is her second-line supervisor. This paragraph does not state the basis for a claim, but rather, is included as background information. Paragraph 19 states that Mr. Raps and Mr. Strasfeld are close friends and Mr. Stasfeld affected Mr. Raps' transfer to OED. This is also background information that the court may consider. In addition, paragraph 19 contains another allegation that EBSA management allegedly referred to Ms. Weng as "the Chinker." The same analysis with respect to paragraphs 15 and 16 applies to this allegation. Accordingly, paragraphs 18 and 19 will not be dismissed.

Paragraph 23 states that in June 2005, Mr. Raps harassed Plaintiff for attending an Agency Asian Pacific American Council meeting, after which she sought permission to go on a

ORDER-15

detail. The court finds that this allegation is supportive of Ms. Weng's hostile work environment claim. It is of the same discriminatory nature and perpetrated by the same manager. Accordingly, paragraph 23 will stand.

Paragraphs 24 and 25 allege that on June 24, 2005, Mr. Strasfeld warned Ms. Weng not to "burn her bridges," which she interpreted as a threat regarding taking EEOC action. This is a discrete act that cannot now be incorporated into her hostile work environment claim. "Discrete acts" are individual acts that "occur" at a fixed time. *Morgan*, 536 U.S. at 114; *Coleman-Adebayo v. Leavitt*, 326 F.Supp.2d 132, 138 (D.D.C. 2004) (stating that the focus is on whether a court can discern the date of an act's occurrence). Accordingly, paragraphs 24 and 25 will be dismissed as untimely.

Paragraph 27 states that Mr. Strasfeld delayed granting permission but eventually allowed Ms. Weng to go on a detail to the OCA. It also states that Ms. Weng received good reviews while on that detail. Paragraph 27 does not advance any claim on Plaintiff's behalf, so it is irrelevant whether it meets the *Morgan* standard. Likewise, paragraph 31 only states background facts. Therefore, paragraphs 27 and 31 will stand.

Paragraph 32 contains allegations regarding Mr. Raps' alleged harassment of Ms. Weng. The claim alleges exactly the type of pervasive, insulting, discriminatory conduct that is the basis for Ms. Weng's hostile work environment claim. Importantly, the alleged actions are not discrete acts. These claims meet the *Morgan* standard for relating to Ms. Weng's hostile work environment claims. Paragraph 32 will stand.

### b.    *The Fifth Formal EEOC Complaint*

An employee may bring a civil action within ninety days after receipt of the EEO counselor's final action, or within one-hundred-eighty days from the filing of the EEO complaint

1  if no appeal or final action occurred. 29 C.F.R. § 1614.407(b). Ms. Weng filed her fifth formal
2  complaint on April 6, 2009. The complaint was dismissed by the CRC on May 1, 2009.
3  Therefore, Ms. Weng had until August 1, 2009 to timely file a civil action.

4      The instant case was filed on December 1, 2010, more than five-hundred-seventy-five
5  days after the agency's dismissal. Plaintiff counters that she does not seek to "recover regarding
6  the claims in her fifth formal complaint" rather she provided the information "as background
7  facts pertaining to her prior protected EEO activity." (Dkt. No. 9 at 21.) The court finds that the
8  allegations contained in the fifth formal EEOC complaint are barred on exhaustion grounds.
9  However, consistent with *Morgan*, the court may consider these allegations as background
10  evidence. *Morgan*, 536 U.S. at 113 (stating that time-barred acts may be used "as background
11  evidence in support of a timely claim"); accord *Halcomb v. Office of Sergeant-at-Arms*, 563
12  F.Supp.2d 228, 242 (D.D.C. 2008) (finding that background evidence cannot "independently
13  provide the basis" for liability). Accordingly, although the allegations in the fifth EEOC
14  complaint cannot be the independent basis for liability, the allegations will stand as further
15  background evidence.

### c.    The Seventh Formal EEOC Complaint

16      A complainant who has filed an appeal of a FAD with the EEOC may bring a civil action
17  in a United States District Court "[w]ithin 90 days of receipt of the Commission's final decision
18  on an appeal" or "[a]fter 180 days from the date of the filing of an appeal ... if there has been no
19  final decision by the Commission." 29 C.F.R. § 1614.407(c), (d). Complainants must timely
20  exhaust these remedies before bringing their claims to court. *Bayer v. U.S. Dep't of Treasury*,
21  956 F.2d 330, 332 (D.C.Cir.1992) ("This administrative remedies exhaustion requirement is
22  mandatory.")

ORDER-17

Ms. Weng filed her seventh formal EEOC complaint on July 23, 2010. Therefore, a civil action concerning this complaint could not properly be filed in district court until January 23, 2011. Ms. Weng filed the instant complaint on December 1, 2010. Ms. Weng concedes that the seventh formal EEOC complaint was not administratively exhausted when she filed the present case, but contends that the court should still proceed with the claims because the CRC dismissed the complaint on the grounds that she filed a civil action in district court.

Plaintiff carries the burden of pleading and proving facts supporting equitable avoidance of the waiting period. She has not carried that burden. She has not argued that any of the narrow set of recognized bases for equitable avoidance apply here. "Congress's preference for federal agencies to examine and either correct or resolve through informal mediation or formal complaint procedures allegations of discrimination in the federal workplace before there is resort to private lawsuits in court counsels against permitting equitable avoidance here." *Noisette v. Geithner*, 693 F.Supp.2d 60, 69 (D.D.C. 2010).   Accordingly, Ms. Weng's seventh formal complaint is not properly part of this action. Paragraphs 90, 91 and 93 are dismissed without prejudice.

### d.    Paragraphs 73 and 89

Defendant contends that the claims alleged in paragraphs 73 and 89 were not raised in a prior formal EEOC complaint. Plaintiff counters that the allegations raised in paragraph 73 were raised in the fourth informal complaint addressed to the EEOC counselor, and the allegations contained in paragraph 89 where raised in the statement which accompanied the seventh informal complaint. Nevertheless, Ms. Weng concedes that the incidents "described in ¶¶ 73 and 89 are only matters of evidence, not allegations of an adverse action in and of themselves…." (Dkt. No. 9 at 19.). She claims the court may consider the allegations as further support for her

ORDER-18

1    hostile work environment claim. The court disagrees. Paragraph 73 describes Mr. Raps' alleged

2    threat on April 2, 2008 to place Ms. Weng on a Performance Improvement Plan, and paragraph

3    89 refers to an April 22, 2010 meeting during which Mr. Raps allegedly brought a third-party to

4    Ms. Weng's performance review. Both incidents are the type of discriminatory acts that clearly

5    fall within the category of discrete acts envisioned by the *Morgan* Court. As such, they cannot

6    now be incorporated into Ms. Weng's hostile work environment claim. Notwithstanding the fact

7    that the allegations in paragraph 73 cannot form the basis for Ms. Weng's hostile work

8    environment claim, it may still be considered as background evidence. *Morgan*, 536 U.S. at 113

9    (stating that time-barred acts may be used "as background evidence in support of a timely

10   claim"). Paragraph 89, on the other hand, alleges events that purportedly occurred in March and

11   April, 2010. Because these events occurred after the events that form the basis of the instant

12   complaint, they cannot be considered "background information." As such, paragraph 73 will

13   stand, but paragraph 89 will be dismissed.

14                       **2.    *The Grievance Claims***

15        Ms. Weng references various personnel actions and events that she has already submitted

16   to arbitration pursuant to the negotiated grievance procedure contained in the Collective

17   Bargaining Agreement ("CBA") between the Agency and AFGE Local 12 (the union to which

18   Ms. Weng is a member). Under the CBA, an employee making an allegation of discrimination in

19   connection with an adverse action may elect to file a grievance or a formal EEOC complaint, but

20   not both. *See Smith v. Jackson*, 539 F.Supp.2d 116, 130 (D.D.C. 2008) ("Under the Civil Service

21   Reform Act, a federal employee who believes he has been discriminated against and whose

22   agency's negotiated agreement permits the acceptance of grievances alleging discrimination may

23   file *either* a grievance or an EEO complaint, but not both.") (emphasis in original).

ORDER-19

Ms. Weng concedes the she elected to pursue the claims associated with the allegations contained in paragraphs 78, 85, 88, 92, 94, and 96-98 through the negotiated grievance procedure. Nevertheless, she claims that the allegations should not be dismissed because they "merely provide[] background information in support" of her hostile work environment claim. (Dkt. No. 9 at 23.). The court disagrees. The allegations contained in these paragraphs pertain to a time period ranging from January 2009 through November 2010. In other words, they post-date all other allegations contained in the instant complaint. As such, they cannot be considered "background information" in support of Plaintiff's hostile work environment claim. Accordingly, paragraphs 78, 85, 88, 92, 94, and 96-98 will be dismissed.

### 3.    *The Pattern and Practice Claims*

Defendant moves to dismiss Ms. Weng's allegations of pattern and practice in paragraphs 104, 110 and 115 because she neither raised nor exhausted such claims at the administrative level. In response, Ms. Weng states that she voluntarily dismisses any reference to "pattern or practice" in those paragraphs. (Dkt. No. 9 at 25.). Accordingly, any reference to "pattern or practice" will be struck from the complaint.

### 4.    *The Rehabilitation Act Claim*

Defendant asserts that Ms. Weng's claim under the Rehabilitation Act must be dismissed pursuant to Rule 12(b)(6) because she fails to allege a specific disability. Plaintiff counters that her Rehabilitation claim is not based on her alleged disability.  (Dkt. No. 9 at 26.). Rather, she argues, the claim is based on the actions the Agency allegedly took in response to her accommodation requests. She claims that Mr. Raps issued her two work suspensions and made several threats to terminate her in response to her request for accommodation (*see, e.g*, dkt. no. 1

ORDER-20

at ¶¶ 60-61.), and that these allegedly retaliatory actions are the basis for her Rehabilitation claim.

The court agrees that such actions, if true, can be the basis for liability under the Rehabilitation Act. The Act provides that "[n]o otherwise qualified individual with a disability" may "be subjected to discrimination" by any federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Act further provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under ... the Americans with Disabilities Act of 1990, (42 U.S.C. § 12111 et seq.)." *Id.* at § 794(d); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C.Cir.2010) (applying the ADA's anti-retaliation provision to the Rehabilitation Act). The ADA's anti-retaliation provision forbids "discrimina [tion] against any individual because such individual ... made a charge ... under this chapter." 42 U.S.C. § 12203(a). The D.C. Circuit has held that the framework for analyzing anti-retaliation suits under the ADA/Rehabilitation Act mirrors that applied for retaliation suits under Title VII of the Civil Rights Act. *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C.Cir.2005) ("Although the [retaliation] framework was developed for Title VII cases, our sister circuits have all accepted its application to ADA retaliation suits under 12203(a), as we do now.") (cases cited). Accordingly, Defendant's motion to dismiss the Rehabilitation Act claim is denied.

### 5.     *Defendant's Motion to Strike pursuant to Federal Rule 12(f)*

Defendant alleges that paragraphs 15-19, 23-25, 27, 31-32, 73, 79, 81, 85, 88, 89-98, 104 and 110 should be stricken pursuant to Federal Rule 12(f). As the court has already determined many of these paragraphs should be dismissed, the ones remaining for consideration are paragraphs 15-19, 23, 27, 31-32, 73, 79, 81, 89-91, 93, 95, 104 and 110.

ORDER-21

Defendant does not argue that any specific prejudice would result from the inclusion of these paragraphs, instead it claims that "[t]he likely result of injecting these impertinent allegations would be to confuse the issues and to unfairly cast a derogatory light on Agency management, generally. (Dkt. No. 6 at 32.). "Striking pleadings is an extreme and disfavored remedy." *Brown v. Broadcasting Bd. of Governors*, 2009 WL 2704586, at *3 n5 (D.D.C. 2009). The fact that Plaintiff's allegations may cast the Agency in a "derogatory light" is insufficient to warrant the striking of allegations from a complaint. *See, e.g., Uzlyan v. Solis*, 1:09-cv-01035-RMC (Dkt. No. 18 at 19.). Here, the challenged allegations do not include provocative language or detract from the dignity of the court. Although some of the allegations in the complaint are arguably irrelevant to Ms. Weng's remaining claims, they are not scandalous or impertinent. *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (internal citations omitted.) ("The word "scandalous' in Rule 12(f) generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." ). Defendant has failed to show any prejudice. The motion to strike is denied.

## IV.    CONCLUSION

For the foregoing reasons, the court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss or in the alternative for Partial Summary Judgment. The following paragraphs are DISMISSED from the Complaint: 24-25, 78, 85, 88-94[11], and 96-98. In addition, the phrase "pattern or practice" is struck from paragraphs 104, 110 and 115. The following paragraphs contain allegations that cannot form the independent basis for plaintiff's

---

[11]      Paragraphs 90, 91 and 93 are dismissed without prejudice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

hostile work environment claim, but may be considered by the court as background information: 18, 27, 31, 72, 79 and 81.

Plaintiff is ordered to file a First Amended Complaint that conforms with the court's ruling within thirty days of the date of this order.

DATED this 3rd day of February, 2012.

A

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER-23