**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KARIN WENG,** | |
| *Plaintiff* | |
| | Civil Action No. 10-cv-2051 (BJR) |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **HILDA L. SOLIS, Secretary of Labor** | |
| *Defendant*. | |

## I.     INTRODUCTION

Plaintiff Karin Weng brings this action against Defendant Hilda L. Solis, Secretary of Labor, U.S. Department of Labor, in her official capacity, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Rehabilitation Act of 1973, 29 U.S.C. § 749(a) ("Rehabilitation Act"). Plaintiff alleges that Defendant discriminated against her based on her race (Asian), national origin (Taiwanese), sex (female), and/or in retaliation for Plaintiff's prior protected EEO activity. Plaintiff also claims that Defendant subjected her to a hostile work environment. Dkt. No. 16, Amended Complaint ("Am. Comp.") at ¶ 2.

Presently before the Court is Defendant's Motion for Partial Summary Judgment. Dkt. No. 24 Motion for Partial Summary Judgment ("Mot."). Defendant does not seek summary judgment as to the entire Amended Complaint; rather, she seeks to dismiss some of the allegations on which Plaintiff bases her discrimination claims. Defendant argues that the undisputed material facts demonstrate that: (1) these alleged incidents do not constitute adverse employment actions under Title VII, and (2) Plaintiff cannot produce sufficient evidence for a

reasonable jury to find that Defendant's stated reasons for its actions were mere pretexts for discrimination based on race, national origin, or sex. Defendant does not seek to dismiss the remainder of Plaintiff's discrimination claims, nor does it challenge Plaintiff's retaliation or hostile work environment claims at this time. Plaintiff opposes the motion. Dkt. No. 29 Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment ("Opp."). Having reviewed the motion, the opposition and reply thereto, the entire record and relevant case law, the Court finds and rules as follows.

## II. BACKGROUND

The parties provide detailed versions of the factual background in this case. The Court incorporates only those details necessary as background for Plaintiff's claims and Defendant's response. In addition, because Defendant does not challenge Plaintiff's retaliation and/or hostile work environment claims with this motion, the Court limits the Background section to those facts that are relevant to her discrimination claims.

Plaintiff, an Asian-American female, was employed by the U.S. Department of Labor ("DOL") as a former Pension Law Specialist for the Employment Benefits Security Administration ("EBSA"), Division of Individual Exemptions, Office of Exemption Determinations ("OED"). Am. Comp. at ¶¶ 10-12. Her primary duty was to process applications for administrative exemptions from the prohibited transaction provisions of the Employee Retirement Income Security Act. *Id*. at ¶ 12. She was hired by the OED in 1995 and retained her position until 2010 when she was discharged. Opp. at 2.

Plaintiff claims that from the moment she started working at the OED in 1995, she, along with other minority employees, was subject to racial and sexual slurs, comments, jokes, and derogatory name calling. *Id*. at 1. She submits an affidavit from a co-worker, Janet Schmidt, in

which Ms. Schmidt testifies that OED managers referred to Plaintiff as "the Chinker" and claimed that they were "going to see about firing the Chinker." Dkt. No. 30, Ex. 3.

In February 2006, Plaintiff testified at an EEO arbitration between Ms. Schmidt and Plaintiff's first-line supervisor, Mr. Raps (who is a white American male). Am. Comp. at ¶ 30. Shortly thereafter, on February 14, 2006, Plaintiff requested that she be allowed to work a second Flexiplace day from home each week.[1] *See* Dkt. No. 33-9. Plaintiff asserts that Mr. Raps denied the request; Defendant claims that Mr. Raps informed Plaintiff that a final decision would not be made on her request until the following week when Plaintiff's second-line supervisor, Lyssa Hall (who is an African American female), returned to the office. Dkt. No. 30 at ¶ 32; Dkt. No. 24 at ¶ 32.

On February 23, 2006, Plaintiff, Mr. Raps, and Ms. Hall met. *Id*. The parties disagree as to the purpose of the meeting. Plaintiff contends that she "requested the meeting to appeal Mr. Raps' denial of…. [her] request for a second flexiplace day." Dkt. No. 33, Ex. 43. Defendant asserts that the purpose of the meeting was to "informally counsel" Plaintiff about her "unacceptable" behavior in the workplace. *See* Dkt. No. 24. However, both parties agree that, at the meeting, Ms. Hall approved Plaintiff's request for a second Flexiplace day. *Id*.; Dkt. No. 33, Ex. 43.

Plaintiff further alleges that beginning in February 2006, Mr. Raps started making harassing phone calls to her at home while she was working on Flexiplace. Dkt. No. 30 at ¶ 44. Plaintiff admits that the phone calls were not ethnically or sexually charged. *Id*. at ¶¶ 45-46. Plaintiff further admits that the subject of each phone call was about work, but argues that the true purpose of the phone calls was to harass her. *Id*. at ¶ 47.

---

[1]     Flexiplace is an OED program that allows employees to work from home a certain number of days per week.

Thereafter, on April 21, 2006, Mr. Raps conducted Plaintiff's FY 2006 mid-year evaluation and rated her as "needs to improve" in every performance standard for a "minimally satisfactory" overall rating. *Id*. at ¶ 38; Dkt. No. 30 at ¶ 38. He also requested that she take a remedial writing course. Dkt. No. 24 at ¶ 40; Dkt. N. 30 at ¶ 40. Later that evening, Plaintiff stopped by Mr. Raps' office, handed him a file, and immediately left. Dkt. No. 24 at ¶ 3; Dkt. No. 30 at ¶ 3. Defendant alleges that Mr. Raps "called [Plaintiff] back to his office" … "[but] Plaintiff deliberately ignored his repeated calls and left for the evening." Dkt. No. 24 at ¶ 3. Plaintiff admits that Mr. Raps called her back, but "cannot say with certainty how many times he called her name because she left the office in great haste after signing out." Dkt. No. 30 at ¶ 1.

On April 24, 2006, Mr. Raps issued Plaintiff a "Warning Memorandum," in which he admonished Plaintiff for disrespectful conduct when she refused to respond to his request to return to his office. Dkt. No. 24 at ¶ 4; Am. Comp. at ¶ 33. The Warning Memorandum also states that Plaintiff had been "informally counseled on at least three prior occasions (April 18, 2006, March 23, 2006, and February 23, 2006) about the importance of, among other things, being able to interact with [Mr. Raps] on work matters in order for [Plaintiff] to successfully do [her] job." *Id*. The Memorandum concludes as follows: "This memorandum serves to advise you that any further incidents similar to the one that occurred [on April 21, 2006] may subject you to more serious disciplinary action." *Id*.

Next, Defendant asserts that on April 27 and 28, 2006 Plaintiff refused to meet with Mr. Raps to discuss a case file and behaved rudely towards him. Dkt. No. 24 at ¶ 5. On May 10, 2006, Mr. Raps issued a Letter of Reprimand to Plaintiff, claiming that she (1) failed to follow instructions, and (2) acted unprofessionally, based on the April 27 and 28 incidents. *Id*. at ¶ 10, Ex. F. Plaintiff challenges Mr. Raps' characterization of the April 27 and 28 incidents in the May

10, 2006 Letter of Reprimand. She disputes that she behaved unprofessionally and/or failed to follow instructions. Dkt. No. 30 at ¶ 2. She also questions whether the April 27 and 28 incidents were the real motivation for the Letter of Reprimand, noting that she had filed an EEO complaint two days earlier, on April 25. Dkt. No. 24, Ex. H.

On November 14, 2006, Plaintiff's attorney sent a letter to Plaintiff's supervisors stating that Plaintiff suffers from a "disabling anxiety disorder" and related "mood disorders." Dkt. No. 35, Ex. 23. Plaintiff asserted that the disorders are "at least in part connected to the stress she has suffered as a result of the hostile work environment created by Mr. Raps and other OED management officials." *Id*. She further claimed that her disorders "cause[] her to suffer panic attacks in 'adversarial' interactions." *Id*. Plaintiff provided statements from her treating psychiatrist and her treating physician, both of whom "strongly recommended" that Plaintiff "not meet alone with Mr. Raps and that a neutral third party be present in all of their meetings." *Id*.

Plaintiff claims that Defendant "blatantly ignored" her request for a medical accommodation. *Id*. Instead, Mr. Raps continued to insist that Plaintiff meet alone with him. Dkt. No. 24, Ex. K. For instance, the parties agree that on November 15, 2006 (one day after Plaintiff made her request for the medical accommodation), Mr. Raps insisted on two separate occasions that Plaintiff meet with him alone in her office. *Id*.; Dkt. No. 30 at ¶ 17. Each time, Plaintiff brought a union representative with her to the meeting. *Id*. Defendant alleges that the same thing occurred on November 29, 2006; Mr. Raps requested to meet with Plaintiff alone, and Plaintiff brought two union representatives with her to the meeting. Dkt. No. 24, Ex. K.

On December 14, 2006, Mr. Raps proposed that Plaintiff be suspended without pay for five work days for failing to follow his instructions to meet with him alone in his office. *Id*. Plaintiff's attorney filed a written objection to the proposed suspension, citing her November 14,

2006 request for a medical accommodation. Dkt. No. 35, Ex. 23. The proposed suspension was instituted by Ms. Hall on March 27, 2008, but reduced to two work days.

Thereafter, on December 19, 2006, Plaintiff was removed from the Flexiplace program. Dkt. No. 24, Ex. U. Defendant asserts that she was removed from the program per the Plaintiff's Flexiplace Agreement, which provided that she is permitted to work outside the office as long as her performance "is fully successful and [she] has demonstrated an ability to work alone and without face-to-face supervision." Dkt. No. 24 at ¶ 37. Accordingly to Defendant, Plaintiff received a "minimally satisfactory" rating on her 2006 annual performance review and thus, was no longer qualified for the Flexiplace program. *Id*. at ¶ 38.

In January 2007, Mr. Raps was temporarily assigned to EBSA's Office of the Chief Accountant. Dkt. No. 30 ¶ 29. During that time, Plaintiff alleges that she reported to Ms. Hall without incident. Dkt. No. 35, Ex. 23. However, Mr. Raps returned to OED on October 1, 2007 and Plaintiff was told that she would have to resume meeting alone with him in his office. Dkt. No. 30 ¶ 29. Plaintiff claims that she tried to secure permission, on medical grounds, to meet with Mr. Raps while standing in his doorway, but her request was denied. *Id*.

Thereafter, on October 9, 2007, Mr. Raps requested to meet with Plaintiff in his office. Dkt. No. 24, Ex. L. When Plaintiff stood in his doorway, he insisted that she come into his office and sit. *Id*. Mr. Raps alleges that Plaintiff became upset; Plaintiff alleges that she suffered a panic attack. *Id*. She claims that Mr. Raps "knowingly triggered" the panic attack "by his harassment of her." Dkt. No. 30 at ¶ 27; Dkt. No. 31, Ex. 23.

On December 6, 2007, Mr. Raps issued Plaintiff a proposed fourteen day suspension without pay. Dkt. No. 24, Ex. L. Plaintiff's attorney filed a written objection to the proposed

suspension. Dkt. No. 35, Ex. 23. The suspension was affirmed and instituted on March 12, 2008. *Id.*

## III.    DISCUSSION

### A.    **Legal Standard for a Motion for Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. A court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. The nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). The nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence presented is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.

### B.    **Plaintiff's Discrimination Claims**

Plaintiff alleges that Defendant intentionally discriminated against her on the basis of her race, national origin, and sex by subjecting her to racial and sexual slurs, making false charges of

misconduct against her, and subjecting her to unfounded discipline. Am. Comp. at ¶ 103.

Defendant seeks summary judgment as to Plaintiff's discrimination claims with respect to the

following discrete incidents: (1) the April 24, 2006 written Warning Memorandum; (2) the May

10, 2006 Letter of Reprimand; (3) the alleged denial of her request for a second Flexiplace day

per week; (4) the five-day work suspension; (5) the fourteen day work suspension; (6) the

writing course; and (7) Plaintiff's removal from Flexiplace. Mot. at 1. Defendant also contends

that the alleged offensive name calling and slurs, harassing phone calls, threats to terminate her,

and false accusations of misconduct cannot survive summary judgment. *Id*. at 2. According to

Defendant, the undisputed material facts show that Plaintiff did not suffer an adverse

employment action within the meaning of Title VII and no reasonable jury could find that

Defendant's proffered reasons for its actions were mere pretext for discrimination based on race,

national origin, or sex. *Id*.

Title VII makes it unlawful for an employer to "…discriminate against any individual

with respect to her compensation, terms, condition, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In order to

establish a claim for discrimination under Title VII, Plaintiff must demonstrate: (1) that she

suffered an adverse employment action (2) because of her race, national origin, and/or sex.

*Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) ("A plaintiff must prove both

elements to sustain a discrimination claim."). In most cases in federal court, adverse action is not

in dispute and the court may turn to the familiar *McDonnell Douglas* burden-shifting framework

to review the second element of a plaintiff's discrimination claim. However, here, Defendant

contests whether Plaintiff suffered an adverse action, so that is where this Court's analysis must

begin.

1.    **Whether the Challenged Employment Actions Were Adverse within the Meaning of Title VII**

In order to present a viable claim of employment discrimination under Title VII, a Plaintiff must show she suffered an adverse employment action. *Ginger v. Dist. of Columbia*, 527 F.3d 1340, 1343 (D.C. Cir. 2008). An "adverse employment action" is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). An employee must "experience[ ] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (distinguishing between "purely subjective injuries" which are not actionable, and "objectively tangible harm," which is). Further, "[a] tangible employment action in most cases inflicts direct economic harm." *Burlington Indus., Inc.*, 524 U.S. at 762. Thus, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)); *see also*, *Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 1556-57 (D.C. Cir. 1997) (courts must guard against "judicial micromanagement of business practices").

As discussed above, Defendant seeks dismissal of a number of Plaintiff's allegations, arguing that they do not constitute adverse employment actions within the meaning of Title VII. The Court will address each alleged action in turn.

### a.    The April 24, 2006 Warning Memorandum

On April 24, 2006, Mr. Raps issued Plaintiff a written "Warning Memorandum," in which he admonished her for "disrespectful conduct" when she allegedly refused to respond to his request to return to his office. Dkt. No. 24 at ¶ 4; Am. Comp. at ¶ 33. It is clear that the parties "are in disagreement over the relevant facts comprising" the Warning Memorandum. Opp. at 19. Indeed, Plaintiff submitted a point-by-point written rebuttal to the Warning Memorandum shortly after it was issued. Dkt. No. 24, Ex. C. What is also clear is that Plaintiff does not present any evidence that the Warning Memorandum affected her grade, salary, or benefits. Nor does she demonstrate that the Memorandum affected the terms, conditions, or privileges of her employment or future employment opportunities. Without such evidence, a reasonable trier of fact cannot conclude that she "suffered objectively tangible harm" as a result of the Warning Memorandum. *Brown v. Brody*, 199 F.3d 446, 457 (D.C. 1999) (overruled on other grounds) (formal criticisms that did not affect employee's grade or salary do not constitute adverse employment actions); *Stewart*, 275 F.3d at 1135 (noting that "formal criticisms or reprimand without additional disciplinary action" are not adverse employment actions); *Broderick v. Donaldson*, 437 F.3d 1226, 1234 n. 2 (D.C. Cir. 2006) (finding that "disciplinary memo" does not constitute adverse action when it did not affect plaintiff's "grade, salary, duties or responsibilities"); *Powell v. Castaneda*, 390 F. Supp. 2d 1, 11 (D.D.C. 2005) (finding that letter of reprimand and lower performance review did not constitute adverse employment actions); *Milburn v. West*, 854 F. Supp. 1, 9, 14 (D.D.C. 1994) (a memorandum to plaintiff's file stating that the next incident of insubordination would lead to termination was not an adverse employment action because it did not result in any demonstrable harm). Thus, the April 24, 2006 Warning Memorandum cannot constitute an adverse employment action.

### b.      The May 10, 2006 Letter of Reprimand

On May 10, 2006, Mr. Raps issued a Letter of Reprimand to Plaintiff for (1) failure to

follow instructions, and (2) unprofessional conduct, based on two incidents that allegedly

occurred on April 27 and 28, 2006. Plaintiff challenges Mr. Raps' characterization of the April

27 and 28 incidents, disputing that she behaved unprofessionally and/or failed to follow

instructions. Dkt. No. 30 at ¶ 2. Instead, she claims that Mr. Raps needlessly engaged her for the

purpose of harassing her. Dkt. No. 24, Ex. H. She also questioned whether the April 27 and 28

incidents were the real motivation for the Letter of Reprimand, noting that she had filed an EEO

complaint two days earlier, on April 25. *Id*.

Nevertheless, just as the Warning Memorandum did not constitute an adverse

employment action, the Letter of Reprimand cannot constitute an adverse action because

Plaintiff has failed to present evidence that the disciplinary action directly affected her job title,

duties, salary, benefits, or work hours in any material manner. *See, e.g*., *Hunter v. Ark*

*Restaurants Corp*., 3 F. Supp. 2d 9, 20 (D.D.C. 1998) (finding that supervisors filing disciplinary

write-ups against plaintiff is not an adverse employment action when plaintiff did not allege any

facts that he suffered a "demonstrably adverse action" that affected his employment position).

Nor is the Letter of Reprimand transformed into an adverse employment action simply

because it may have increased Plaintiff's risk of suspension or termination. As the D.C. Circuit

has explained, "such an unrealized risk of a future adverse action, even if formalized, is too

ephemeral to constitute an adverse employment action." *Russell*, 257 F.3d at 819-20 (plaintiff's

temporary exposure to an increased risk of termination due to a performance evaluation would

not constitute an adverse employment action). *See also Santa Cruz v. Snow*, 402 F. Supp. 2d 113,

122 (D.D.C. 2005) (the possibility that warnings may be reviewed in connection with

applications for future promotions "is too attenuated to create the requisite adversity"); *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 47 (D.D.C. 2001) ("Criticism of an employee's performance unaccompanied by a change in position or status does not constitute adverse employment action."). Moreover, "[a] mere warning of possible future disciplinary action ... does not constitute an independent adverse employment action [even if] the employer later followed through on the warning." *Santa Cruz*, 402 F. Supp. 2d at 122. "[T]o be considered an adverse employment action, the warning must *itself* affect the terms, conditions, or privileges of [the plaintiff's] employment." *Id.* (citing *Harris v. Potter*, 310 F. Supp. 2d 18, 21 (D.D.C. 2004)) (emphasis in original). Here, Plaintiff has made no showing that the Letter of Reprimand, by itself, affected a term, condition, or privilege of her employment. Accordingly, the May 10, 2006 Letter of Reprimand does not constitute an adverse employment action.

     **c.**      **The Two Work Suspensions**

In March 2007, Plaintiff served a two day suspension without pay (it was originally imposed as a five day suspension); in March 2008, she served a fourteen day suspension without pay. In this Circuit, suspensions without pay constitute adverse employment actions. *See Banks v. District of Columbia*, 498 F. Supp. 2d 228 (D.D.C. 2007) (noting that a nine day suspension without pay "can certainly be described as an adverse employment action"); *Greer v. Paulson*, 505 F.3d 1306, 1317-18 (D.C. Cir. 2007) (noting that the Supreme Court "recently observed ... [that] a suspension without pay, even where the employer later provided back pay, could be a 'serious hardship' to a reasonable employee, and thus 'materially adverse'") ; cf. *Roberson v. Snow*, 404 F. Supp. 2d 79, 93 (D.D.C. 2005) (noting that a suspension with pay does not constitute an adverse employment action). Accordingly, this Court concludes that the March 2007 and 2008 suspensions were adverse employment actions within the meaning of Title VII.

### d. The "Denial" of the Second Flexiplace Day

In February 2006, Plaintiff requested that she be allowed to work a second Flexiplace day from home each week. The parties disagree whether Mr. Raps denied that request. Plaintiff claims that he denied the request; Defendant claims that Mr. Raps informed Plaintiff that a final decision would not be made on her request until the following week when Ms. Hall returned to the office. However, both parties agree that one week later, Ms. Hall approved Plaintiff's request. Thus, even if Mr. Raps did deny Plaintiff's request for a second Flexiplace day, the denial does not constitute an adverse employment action because it was rescinded one week later. *See Wade v. District of Columbia*, 780 F. Supp. 2d 1, 17 (D.D.C. 2011) (noting that "[t]he fact that the reprimand was rescinded generally precludes a claim that the reprimand was materially adverse."); *Na'im v. Rice*, 626 F. Supp. 2d 63, 78 (D.D.C. 2009) (holding that reprimand did not constitute materially adverse action because it was rescinded).

### e. Plaintiff's Removal from the Flexiplace Program

Plaintiff was removed from OED's Flexiplace program in November 2006. By doing so, Defendant denied Plaintiff the opportunity to work from home one day a week. A reasonable fact finder could find that this materially affected "the terms, conditions, or privileges of [Plaintiff's] employment." *Brown*, 199 F.3d at 457. Accordingly, this Court concludes that removing Plaintiff from the Flexiplace program constituted an adverse employment action within the meaning of Title VII.

### f. The Writing Course

During Plaintiff's FY 2006 mid-year performance evaluation, Mr. Raps requested that Plaintiff take a remedial writing course. Plaintiff completed the three-day course at no expense to herself and without the need to take personal leave. Dkt. No. 24 at ¶ 42; Dkt. No. 30 at ¶ 42.

Plaintiff has presented no evidence that attending the writing course affected the terms, conditions, or privileges of her employment. Accordingly, it does not constitute an adverse action. "Not everything that makes an employee unhappy" is an adverse employment action. *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (quoting *Russell*, 257 F.3d at 818).

g.      **Offensive Slurs and Derogatory Names**

Plaintiff alleges that from the time she joined OED, she, along with other minority employees, was subjected to offensive racial, ethnic and/or sexually charged slurs, comments, and jokes by OED management. Dkt. No. 29 at 8. Plaintiff presents a catalog of offensive comments that she alleges were made to her and her minority co-workers. The Court agrees that these comments, if indeed made, are offensive and highly inappropriate. However, Plaintiff has failed to put forth any evidence showing that any one of these comments, by itself, affected "'a significant change in [her] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington*, 524 U.S. at 761). Accordingly, no one of them, by itself, constitutes an adverse employment action within the meaning of Title VII; rather, they are more appropriately a part of Plaintiff's hostile work environment claim. In addition, the evidence of these slurs, comments, and jokes by OED management may be considered by this Court in determining whether Defendant's proffered reasons for its actions are merely pretext for unlawful discrimination. *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009) ("[T]he court…evidence—prima facie, pretext, and any other—to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer [discrimination or] retaliation.").

### h.       Threats to Terminate Plaintiff

Plaintiff alleges that Mr. Raps threatened to terminate her. The D.C. Circuit has repeatedly held that mere threats of termination do not rise to the level of an adverse employment action because they result in no materially adverse consequences or objectively tangible harm. *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also*, *Lutkewitte v. Gonzales*, 436 F.3d 248, 271 (D.C. Cir. 2006) ("Threats of future adverse actions ... may culminate in a tangible employment action if carried out, but they do not themselves meet the standard."); *Cromwell v. Washington Metro. Area Transit Auth.*, 2006 WL 2568009, at * 7 (D.D.C. Sept.5, 2006) (supervisor's threat to terminate plaintiff did not constitute adverse employment action). Plaintiff does not assert that Mr. Raps carried through with his alleged threats of termination and his mere threat, in and of itself, is not an adverse employment action. *Valles-Hall v. Center For Nonprofit Advancement*, 481 F. Supp. 2d 118, 144 (D.D.C. 2007).

### i.       False Charges of Misconduct and Harassing Phone Calls

Lastly, Plaintiff alleges that Mr. Raps waged a "campaign of psychological harassment" against her, which she describes in great detail. Am. Comp. at ¶ 104. However, once again, Plaintiff has failed to show how the actions in the preceding paragraph qualify as adverse employment actions. She has failed to demonstrate that Mr. Raps' alleged micromanagement and nitpicking led to a reduction in her benefits, hours of work or salary, or that she suffered diminished work responsibilities. *See, e.g., Runkle v. Gonzales*, 391 F. Supp. 2d 210, 226 (D.D.C. 2005) (noting that "scrupulous monitoring" does not constitute an adverse action because "it is part of the employer's job to ensure that employees are safely and properly carrying out their jobs"); *Lester v. Natsios*, 290 F. Supp. 2d 11, 30 (D.D.C. 2003) ("[B]eing closely supervised or 'watched' does not constitute an adverse action that can support a claim

under Title VII."); *Hussain v. Principi*, 344 F. Supp. 2d 86, 104-105 ("Monitoring of an employee cannot be an adverse action"); *Zelaya v. UNICCO Service Co.*, 733 F. Supp. 2d 121, 130–31 (D.D.C. 2010) (assigning an employee to monitor plaintiff temporarily constitutes a "petty slight[ ]" and "minor annoyance[ ]" but is not a materially adverse action).

Nor do Mr. Raps' allegedly false accusations regarding Plaintiff's work product constitute adverse action. "It has long been held that an accusation of possible misconduct without more is simply not 'a tangible employment action constitute[ing] a significant change in employment status' and therefore cannot be an adverse personnel action." *Glenn v. Williams*, 2006 WL 401816, *30 (D.D.C. Feb. 21, 2006) (quoting *Burlington Indus.*, 524 U.S. at 761); *see also Velikonja v. Mueller*, 315 F. Supp. 2d 66, 75 (D.D.C. 2004) (stating that actions that impose purely subjective harms, such as dissatisfaction or humiliation, are not adverse)*; Brown*, 199 F.3d at 457 ("[m]ere idiosyncracies of personal preference are not sufficient to state an injury"); *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002) (noting that purely subjective injuries, such as dissatisfaction with reassignment, public humiliation, or loss of reputation are not adverse actions); *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998) (stating that Title VII is not a "general civility code for the American workplace," nor does it serve as a remedy for all instances of verbal or physical harassment).

Accordingly, this Court concludes that three discrete incidents remain on which Plaintiff may base her discrimination claims: (1) the March 2007 suspension, (2) the March 2008 suspension, and (3) her removal from Flexiplace. The Court's inquiry, however, does not end here. Defendant has offered legitimate, nondiscrimination reasons for each incident. Therefore, this Court must now determine whether Plaintiff has produced sufficient evidence for a reasonable jury to find that Defendant's stated reasons are pretextual.

## 2. Whether the Adverse Employment Actions Were Motivated by Plaintiff's Race, National Origin, and/or Sex

Courts generally follow the familiar three-step "burden-shifting approach" set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to determine whether an employee has produced sufficient evidence to show that the employer's actions were motivated by discriminatory animus. *Chappell–Johnson*, 440 F.3d at 487. However, the D.C. Circuit recently explained that where, as here, an employer has presented legitimate, nondiscriminatory reasons for the adverse employment action, the district court need not— *and should not*—decide whether plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady*, 520 F.3d at 493–94 (emphasis in original). Instead, when "an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court should proceed to the ultimate issue: has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id*. In answering this question, the prima facie case remains relevant, but only as part of the evidence the court considers. *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009) (quoting *Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002)) ("[T]he court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other—to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer [discrimination or] retaliation.").

Therefore, the question this Court must answer next is whether Plaintiff has produced sufficient evidence for a reasonable jury to find that Defendant's asserted nondiscriminatory reasons for the March 2007 and 2008 suspensions and for removing her from the Flexiplace

program are pretext, and that Defendant intentionally discriminated against Plaintiff on the basis of her race, national origin, or sex. *Brady*, 520 F.3d at 494.

###### a.    The March 2007 Suspension

The following material facts concerning the March 2007 suspension are not in dispute:

1. On November 14, 2006, Ms. Weng submitted, through her union representative, a request for a medical accommodation in the form of being allowed to bring a third party to any meeting that she has with Mr. Raps. Dkt. No. 31, Ex. 21. She claimed that she was suffering from depression and related mood disorders, and her "condition [was] aggravated by certain stressors that include being supervised in what she perceive[d] to be a threatening manner by Mr. Raps." Dkt. No. 35, Ex. 23. She also submitted documentation from two of her treating physicians, both of whom "strongly recommend[ed]" that a third party be present during all meetings between Plaintiff and Mr. Raps. *Id.*

2. The next day, on November 15, 2006, Mr. Raps requested that Plaintiff attend a work-related meeting alone in his office. Dkt. No. 24, Ex. K; Dkt. No. 25, Ex. 22. Plaintiff came to the meeting with three union officers. *Id.* Mr. Raps canceled the meeting. *Id.*

3. Although Plaintiff had sought permission to bring a third party to any meeting with Mr. Raps, the request had not been granted as of November 15, 2006. Dkt. No. 24 at ¶ 19; Dkt. No. 30 at ¶ 19.

4. On December 14, 2006, Mr. Raps issued to Plaintiff a Notice of Proposed Five-Day Suspension. Dkt. No. 24, Ex. K. Mr. Raps stated that the reason for the suspension

was because Plaintiff failed to follow his instructions to meet with him alone on November 15, 2006. *Id.*

5. The suspension was imposed in March 2007 and was reduced down to two days.

Thus, Defendant contends that Plaintiff was suspended from work for failing to follow her supervisor's instructions. Plaintiff offers several arguments to show pretext. First, she concedes that she failed to follow Mr. Raps instructions, but argues that her failure should be excused because Mr. Raps failed to recognize her serious medical condition. Dkt. No. 30 at ¶¶ 16-17. She argues that there is a genuine issue of material fact as to whether her "conduct on November 15, 2006 [], given her medical conditions, constituted failure to follow supervisory instructions, as charged by Mr. Raps in his Notice of Proposed Suspension dated December 14, 2006 and sustained by her second-line supervisor [Ms.] Hall." Dkt No. 29 at ¶ 3.

Plaintiff also argues that the March 2007 suspension was part of Mr. Raps' "campaign of psychological harassment" against her. Dkt. No. 30 at ¶¶ 22-24. She claims that the very reason she needed the medical accommodation in the first place is because Mr. Raps subjected her to a barrage of unrelenting and abusive "mind games," such that she suffered from post traumatic syndrome disorder. Dkt. No. 35, Ex. 23.

Lastly, she asserts that another co-worker, Ms. Uzlyan, was permitted to have a union representative with her at some of her work meetings with supervisors and she was not suspended. Dkt. No. 32, Exs. 25 & 26. Plaintiff argues that this inconsistent application of work rules demonstrates discriminatory intent in regard to Defendant's treatment of Plaintiff.

Defendant counters that Plaintiff has presented no evidence that suggests that Mr. Raps was motivated by discriminatory animus when he issued the proposed five-day suspension. The Court disagrees. Plaintiff has presented sufficient evidence for a reasonable jury to find that Mr.

Raps was motivated by discriminatory intent. She submitted affidavits from co-workers who allegedly witnessed OED management make repeated racial slurs, including specifically referring to Plaintiff as "the Chinker." One co-worker specifically recalled hearing Mr. Raps laugh when someone referred to Plaintiff by that name, and the same co-worker was told by two other managers that they were going to see what they could do "about firing the Chinker." Dkt. No. 30, Ex. 4.

Moreover, although Mr. Raps and Ms. Hall were the decision-makers with respect to the work suspension, a reasonable jury could find that Mr. Strasfeld influenced the process. Mr. Strasfeld admitted that he was "briefed" with respect to the April 24, 2006 Warning Memorandum and the May 10, 2006 Letter of Reprimand. Dkt. No. 30, Ex. 3. It is entirely reasonable for a jury to find that he was also involved in the decision to suspend Plaintiff. Plaintiff has present more than enough evidence for a jury to find that Mr. Strasfeld was motivated by discriminatory animus. *See, e.g*., Dkt. No. 30, Exs. 3-4.

In addition, a reasonable jury could find it suspicious that one day after receiving Plaintiff's request for a reasonable accommodation, Mr. Raps demanded to meet with her alone. Plaintiff is entitled to all reasonable inferences in her favor to be drawn from the record evidence. *Salazar*, 401 F.3d at 507. Accordingly, the Court will deny Defendant's motion to dismiss this allegation.

   **b.      The March 2008 Suspension**

The following facts regarding the March 2008 suspension are not in dispute:

1.  On October 9, 2007, Mr. Raps requested that Plaintiff meet with him unaccompanied in this office. Dkt. No. 24, Ex. L. Plaintiff reported to the meeting alone, but stood in the doorway. *Id.*; Dkt. No. 30 at ¶ 29.

2. Mr. Raps insisted that Plaintiff come into his office and sit down. *Id*. Plaintiff became very upset and started crying. Plaintiff stated that she was having a panic attack. Dkt. No. 24, Ex. L; Dkt. No. 30 at ¶ 27.

3. On December 6, 2007, Mr. Raps issued Plaintiff a Notice of Proposed Fourteen-Day Suspension. Dkt. No. 24, Ex. L. Mr. Raps stated that the reason for the proposed suspension was because Plaintiff failed to follow his direction on October 9, 2007. *Id*.

4. Plaintiff served the suspension on March 12, 2008.

Once again Plaintiff concedes that she did not meet with Mr. Raps as he requested, but argues that Mr. Raps knowingly "triggered" her panic attack as part of his campaign of harassment against her. Dkt. No. 29 at 25. She disputes Mr. Raps' charge of misconduct and argues that his disciplinary action was unwarranted in light of the circumstances. For the reasons discussed in the proceeding section, the Court finds that Plaintiff has produced sufficient evidence for a reasonable jury to find that Defendant's reasons for the March 2008 suspension were pretextual.

**c.      Plaintiff's Removal from Flexiplace**

On December 19, 2006, Defendant removed Plaintiff from the Flexiplace program. Dkt. No. 24 at ¶ 36. Defendant claims that it removed Plaintiff from the program after she received a "minimally satisfactory" performance evaluation for fiscal year 2006. *Id*. at ¶ 38. However, Plaintiff claims that the "minimally satisfactory" rating on her 2006 performance evaluation was unjustified and motivated by discriminatory animus. Am. Comp. at ¶ 103. Indeed, it is one of the claims that she raises in the Amended Complaint. *Id*.  Defendant does not challenge the claim in the present motion. Accordingly, a genuine issue of material fact exists as to whether the "minimally satisfactory" rating was unjustified, and therefore, by extension, whether Plaintiff's

removal from the Flexiplace program was discriminatorily motivated. The Court will deny Defendant's motion to dismiss this allegation.

## IV.    CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS in part and DENIES in part Defendant's motion for partial summary judgment (Dkt. No. 24). The only incidents alleged in Counts I through III that constitute adverse employment action are:

1. The March 2007 suspension;

2. The March 2008 suspension; and

3. Plaintiff's removal from the Flexiplace program.

Plaintiff has alleged sufficient evidence for a reasonable jury to find that Defendant's proffered reasons for these actions is pretextual.

Dated this 15th day of August, 2013.

Barbara Jacobs Rothstein
U.S. District Court Judge